# In re Sarver

C.P. of York County, no. 62 M.A. 2003.

*John Ogden,* for petitioner.
*Donald B. Hoyt,* for York City Police.

BLACKWELL, *J.,* July 15, 2003—Mr. Brian Sarver, petitioner, seeks to have expunged his mental health records surrounding events of June 29, 2000 to July 3, 2000. He also seeks an order that the York City Police Department, respondent, return his weapons that were seized on or about June 30, 2000.

Petitioner was involved in a standoff at his house with the York City Police on June 29, 2000. Apparently, petitioner's sister called the police and stated a concern about her brother's mental status and that he might be suicidal. The police, as noted in respondent's exhibit 1, called petitioner numerous times until petitioner an-

swered the telephone. The standoff itself lasted 8 to 9 hours, after which time petitioner was taken into custody and, within 45 minutes, taken to York Hospital, where he was admitted.

At some point, a search by consent form was signed by petitioner's mother, the owner of the house at which the subject events transpired. Petitioner's gun, rifle scope and ammunition located in the home were confiscated by the York City Police. Petitioner was never arrested or charged with any offenses as a result of the events on June 29, 2000. Moreover, there was no evidence that petitioner's weapons were used in or in any way related to the events which occurred.

Petitioner, as his counsel indicates, was "brought to" York Hospital on a petition pursuant to 50 Pa.C.S. §7302 (section 302) of the Mental Health Procedures Act, 1976, July 9, P.L. 817, no. 143 §101 et seq. A review of the file establishes that on July 3, 2000, York Hospital applied under 50 Pa.C.S. §7303 (section 303) of the MHPA to have petitioner's involuntary mental health treatment continue. George A. Lapes, M.D., who examined petitioner, concurred with that request. *See* request for certification; petitioner's exhibits A.10-A.13.

On that same date, a hearing was conducted by Attorney Victor Neubaum, a hearing officer appointed by the court to conduct mental health commitment hearings. Attorney Neubaum convened the hearing pursuant to 50 Pa.C.S. §7303. Testimony was taken from three police officers involved in the incident and from Dr. Lapes.

Attorney Neubaum found that there was no direct testimony as to the nature of any suicide threat made by petitioner and that there was no testimony that the peti-

tioner engaged in any threatening or dangerous behavior toward the police. Based on the evidence presented at the hearing, Attorney Neubaum stated that he could not find that petitioner suffered from a mental illness or that he presented a clear and present danger to himself or others. Accordingly, Attorney Neubaum found that "there [was] no need for continuing involuntary care and treatment." The section 303 petition was dismissed and petitioner was discharged.

## RETURN OF PROPERTY

In his petition currently before the court, petitioner seeks the return of his Taurus PT 945 handgun, six boxes of ammunition and a rifle scope. In support of his position, petitioner cites to the standard which generally requires that in order to retain an individual's property, the Commonwealth must prove that the seized property is contraband. We agree with petitioner that the subject property is not contraband in the sense that it was not used in criminal conduct by the petitioner and was not per se illegal at the time of the incident. However, respondent argues that, based on the events as recited above, the petitioner is prohibited from possessing a firearm under 18 Pa.C.S. §6105(c)(4). 18 Pa.C.S. §6105 states in pertinent part as follows:

"Section 6105. Persons not to possess, use, manufacture, control, sell or transfer firearms

*"(a) Offense defined.—*

"(1) A person who has been convicted of an offense enumerated in subsection (b), within or without this Commonwealth, regardless of the length of sentence or whose conduct meets the criteria in subsection (c) shall

not possess, use, control, sell, transfer or manufacture or obtain a license to possess, use, control, sell, transfer or manufacture a firearm in this Commonwealth.

*"(c)* Other persons.—In addition to any person who has been convicted of any offense listed under subsection (b), the following persons shall be subject to the prohibition of subsection (a):

"(4) A person who has been adjudicated as an incompetent or who has been involuntarily committed to a mental institution for inpatient care and treatment under section 302, 303 or 304 of the provisions of the Act of July 9, 1976 (P.L. 817, no. 143), known as the Mental Health Procedures Act. This paragraph shall not apply to any proceeding under section 302 of the Mental Health Procedures Act unless the examining physician has issued a certification that inpatient care was necessary or that the person was committable."

Respondent argues that a commitment under 50 P.S. §7302 (section 302) occurred in this case and that therefore petitioner would be prohibited from possessing his firearm pursuant to section 6105. We would agree with respondent that if petitioner was indeed committed under section 302 of the MHPA as required in 18 Pa.C.S. §6105, this court could not return petitioner's firearm to him.

50 P.S. §7302 (section 302) provides as follows:

*"Section 7302. Involuntary emergency examination and treatment authorized by a physician—not to exceed 120 hours*

*"(a) Application for examination.*—Emergency examination may be undertaken at a treatment facility upon the certification of a physician stating the need for such

examination; or upon a warrant issued by the county administrator authorizing such examination; or without a warrant upon application by a physician or other authorized person who has personally observed conduct showing the need for such examination.

"(1) Warrant for emergency examination.—Upon written application by a physician or other responsible party setting forth facts constituting reasonable grounds to believe a person is severely mentally disabled and in need of immediate treatment, the county administrator may issue a warrant requiring a person authorized by him, or any peace officer, to take such person to the facility specified in the warrant.

"(2) Emergency examination without a warrant.— Upon personal observation of the conduct of a person constituting reasonable grounds to believe that he is severely mentally disabled and in need of immediate treatment, an[y] physician or peace officer, or anyone authorized by the county administrator, may take such person to an approved facility for an emergency examination. Upon arrival, he shall make a written statement setting forth the grounds for believing the person to be in need of such examination.

*"(b) Examination and determination of need for emergency treatment.*—A person taken to a facility shall be examined by a physician within two hours of arrival in order to determine if the person is severely mentally disabled within the meaning of section 301 and in need of immediate treatment. If it is determined that the person is severely mentally disabled and in need of emergency treatment, treatment shall be begun immediately. If the physician does not so find, or if at any time it

appears there is no longer a need for immediate treatment, the person shall be discharged and returned to such place as he may reasonably direct. The physician shall make a record of the examination and his findings. In no event shall a person be accepted for involuntary emergency treatment if a previous application was granted for such treatment and the new application is not based on behavior occurring after the earlier application.

*"(c) Notification of rights at emergency examination.*—Upon arrival at the facility, the person shall be informed of the reasons for emergency examination and of his right to communicate immediately with others. He shall be given reasonable use of the telephone. He shall be requested to furnish the names of parties whom he may want notified of his custody and kept informed of his status.

"The county administrator or the director of the facility shall:

"(1) give notice to such parties of the whereabouts and status of the person, how and when he may be contacted and visited, and how they may obtain information concerning him while he is in inpatient treatment; and

"(2) take reasonable steps to assure that while the person is detained, the health and safety needs of any of his dependents are met, and that his personal property and the premises he occupies are secure.

*"(d) Duration of emergency examination and treatment.*—A person who is in treatment pursuant to this section shall be discharged whenever it is determined that he no longer is in need of treatment and in any event within 120 hours, unless within such period:

"(1) he is admitted to voluntary treatment pursuant to section 202 of this Act; or

"(2) a certification for extended involuntary emergency treatment is filed pursuant to section 303 of this Act."

Thus, section 7302 of the MHPA allows a person's liberties to be restricted if that person meets the definition stated in section 7301(a) (section 301). Section 7301(a) of title 50 defines "Persons who may be subject to involuntary emergency examination and treatment."

*"(a) Persons subject.*—Whenever a person is severely mentally disabled and in need of immediate treatment, he may be made subject to involuntary emergency examination and treatment. A person is severely mentally disabled when, as a result of mental illness, his capacity to exercise self-control, judgment and discretion in the conduct of his affairs and social relations or to care for his own personal needs is so lessened that he poses a clear and present danger of harm to others or himself."

Section 7302(b) requires that a person taken to a facility under the MHPA shall be examined within two hours of arrival to ascertain if the person is severally mentally disabled and in need of immediate treatment. For a person to be taken into custody and taken to such a facility, there must be "reasonable grounds." If, after the examination, the physician finds that this person meets this criteria, treatment begins immediately. If a person is immediately admitted, he or she can be held up to 120 hours. For a person to be held beyond that time frame, a physician must state in writing that the person continues to be in need of extended involuntary emergency treatment. A hearing is then held by either a judge or a mental health hearing officer appointed by the court. See 50 Pa.C.S.

§7303. Only a judge or a hearing officer can certify that further treatment is needed and this certification must comply with subsection 7303(d):

*"Section 7303 Extended involuntary emergency treatment certified by a judge or mental health review officer—not to exceed 20 days*

*"(d) Contents of certification.*—A certification for extended involuntary treatment shall be made in writing upon a form adopted by the department and shall include:

"(1) findings by the judge or mental health review officer as to the reasons that extended involuntary emergency treatment is necessary;

"(2) a description of the treatment to be provided together with an explanation of the adequacy and appropriateness of such treatment, based upon the information received at the hearing;

"(3) any documents required by the provisions of section 302;

"(4) the application as filed pursuant to section 303(a);

"(5) a statement that the person is represented by counsel; and

"(6) an explanation of the effect of the certification, the person's right to petition the court for release under subsection (g), and the continuing right to be represented by counsel."

If a certification is issued, a person can be kept for 20 more days. See 50 P.S. §7303(f). Section 7304 and section 7305 allow a person to be involuntarily committed for up to 90 days and up to 180 days respectively. In the instant matter, there is no dispute that petitioner was discharged at the section 7303 proceeding because the hear-

ing officer found that there was no clear and present danger as to petitioner or the public. Accordingly, no commitment for extended involuntary emergency treatment was ordered by the court.

Respondent argues that, although petitioner did not meet the criteria under section 7303 for extended involuntary emergency treatment, petitioner was "involuntarily committed to a mental institution for inpatient care and treatment under section 7302" and that therefore the prohibitions of 18 Pa.C.S. §6105 applies.

Clearly, the plain language of 18 Pa.C.S. §6105 provides that section 6105 does not apply to *proceedings* under section 7302 of the MHPA *unless an examining physician has issued a certification that inpatient care was necessary or that the person was committable.* 18 Pa.C.S. §6105. Under section 7302, a determination that inpatient care is necessary is required to be made within the first two hours of the individual's arrival at the facility. 50 P.S. §7302(b).

In its memorandum of law, the respondent asserts that "petitioner was examined under section 302 of the MHPA," that "Dr. Lapes determined petitioner was severely mentally disabled" and that a "commitment under section 302 occurred." Respondent's assertions, particularly that petitioner was determined by Dr. Lapes to be severely mentally disabled, however, are not supported by the evidence presented to the court. It was never established that petitioner's examining physician at the time of his admission "certified that inpatient care was necessary" or that "petitioner was committable" under the MHPA. Indeed, the testimony of Dr. Lapes indicates that he himself did not initially examine peti-

tioner when he was brought to the hospital, nor that he made any 302(b) determination. Dr. Lapes merely indicates that petitioner *would have* been examined by an emergency room physician who would have rendered an opinion about his admission to the hospital under section 302. N.T. 04/03/03. Contrary to this testimony, we do note that attached to petitioner's petition is a report signed by Dr. Lapes entitled "admission note" indicating the date of evaluation to be June 30, 2000. However, even if we were to determine that Dr. Lapes was the physician who examined petitioner on June 30, 2000, he offered no testimony that petitioner at the time of his admission was a clear and present danger to himself or to others. Nor does his report suggest anything to support such a finding.

Respondent's referral to Dr. Lapes' examination on July 3, 2000 is of really little consequence to our determination of whether the examining physician, at the time petitioner was admitted, issued the required certification that inpatient care was necessary or that the petitioner was committable. Attorney Neubaum, at the section 7303 hearing held on that same date, determined that petitioner did not suffer from a mental illness or present a clear and present danger to himself or others.

Respondent would have us infer that because petitioner was admitted to the hospital, the requirements of section 302 of the MHPA, and therefore those of section 6105 of title 18, were met. Needless to say, we do not wish to infer facts not supported by the record.

As we have no evidence before us that clearly demonstrates that a certification was issued by a physician stating that inpatient care was necessary or that peti-

tioner was committable under the MHPA, the court will at this point grant petitioner's petition for return of his firearm, as well as his ammunition and rifle scope.

## REQUEST TO EXPUNGE
## MENTAL HEALTH RECORD

Petitioner also requests that the court expunge his mental health records in possession of the Pennsylvania State Police. The statutory provisions relating to petitioner's request can be found at 18 Pa.C.S. §6111.1 which provides in pertinent part the following:

*"(f) Notification of mental health commitment.*—Notwithstanding any statute to the contrary, judges of the courts of common pleas shall notify the Pennsylvania State Police on a form developed by the Pennsylvania State Police of the identity of any individual who has been adjudicated incompetent or who has been involuntarily committed to a mental institution for inpatient care and treatment under the Act of July 9, 1976 (P.L. 817, no. 143), known as the Mental Health Procedures Act, or who has been involuntarily treated as described in section 6105(c)(4) (relating to persons not to possess, use, manufacture, control, sell or transfer firearms). The notification shall be transmitted by the judge to the Pennsylvania State Police within seven days of the adjudication, commitment or treatment.

*"(g) Review by court.*—

"(1) Upon receipt of a copy of the order of a court of competent jurisdiction which vacates a final order or an involuntary certification issued by a mental health review officer, the Pennsylvania State Police shall ex-

punge all records of the involuntary treatment received under subsection (f).

"(2) A person who is involuntarily committed pursuant to section 302 of the Mental Health Procedures Act may petition the court to review the sufficiency of the evidence upon which the commitment was based. If the court determines that the evidence upon which the involuntary commitment was based was insufficient, the court shall order that the record of the commitment submitted to the Pennsylvania State Police be expunged. A petition filed under this subsection shall toll the 60-day period set forth under section 6105(a)(2).

"(3) The Pennsylvania State Police shall expunge all records of an involuntary commitment of an individual who is discharged from a mental health facility based upon the initial review by the physician occurring within two hours of arrival under section 302(b) of the Mental Health Procedures Act and the physician's determination that no severe mental disability existed pursuant to section 302(b) of the Mental Health Procedures Act. The physician shall provide signed confirmation of the determination of the lack of severe mental disability following the initial examination under section 302(b) of the Mental Health Procedures Act to the Pennsylvania State Police."

Because we have found that the record is without evidence to establish that the required certification was issued under section 7302(b) or that petitioner was committable, we will order that petitioner's record of commitment on June 30, 2000 be expunged. Lastly we note that although petitioner had requested of the court to order that he receive a gun permit, petitioner withdrew this request as the issue had been resolved.

The following order shall issue.

## ORDER

And now, to wit, July 15, 2003, it is hereby ordered and directed that the petition for return of seized property filed by petitioner, Brian Lloyd Sarver, is granted as follows:

(1) If there is no appeal taken by any party within 30 days of the entry of this order, the York City Police Department shall return the petitioner's Taurus PT 945 handgun, six boxes of ammunition and rifle scope to petitioner, Brian Lloyd Sarver, at his request; and

(2) If there is no appeal taken by any party within 30 days of the entry of this order, the Pennsylvania State Police shall expunge any record of commitment concerning petitioner with regard to the events of June 29, 2000 through July 3, 2000.

(3) If an appeal is taken concerning this order, the parties shall supply notice of such appeal to the Pennsylvania State Police.

(4) Petitioner's name is Brian Lloyd Sarver. Petitioner's date of birth is February 12, 1969, and petitioner's Social Security Number is [    ].

The clerk of courts shall provide a copy of this order and the foregoing opinion to counsel of record and to the Pennsylvania State Police within ten days of the entry of this order. A courtesy copy of this order and opinion shall also be provided to Attorney Peter J. Mangan.